JS 44   (Rev. 06/17) - TXND (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS
Brian Clark, Individually and on Behalf of All Others Similarly Situated,

### DEFENDANTS
WHITESTONE REIT, James C. Mastandrea and David K Holeman

**(b)**   County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ____ Harris ____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*
R. Dean Gresham, Steckler, Gresham, Cochran, 12720 Hillcrest Rd., Ste. 1045, Dallas, TX 75230, 972-387-4040

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☒ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 2  U.S. Government
     Defendant

☐ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                            *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☒ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
     Proceeding

☐ 2  Removed from
     State Court

☐ 3  Remanded from
     Appellate Court

☐ 4  Reinstated or
     Reopened

☐ 5  Transferred from
     Another District
     *(specify)*

☐ 6  Multidistrict
     Litigation -
     Transfer

☐ 8  Multidistrict
     Litigation -
     Direct File

## VI.  CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1391(b)
Brief description of cause:
The preparation and dissemination of material false and/or misleading information

## VII.  REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BRIAN CLARK, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>v.<br><br>WHITESTONE REIT, JAMES C. MASTANDREA and DAVID K. HOLEMAN,<br><br>      Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE**<br><br>**FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Brian Clark ("Plaintiff"), by his attorneys, except for his own acts, which are based on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Whitestone REIT ("Whitestone" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

### NATURE OF THE ACTION

1.  This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Whitestone securities from May 9, 2018 through February 27, 2019, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.    The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.). This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

4.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District.

## PARTIES

5.    Plaintiff Brian Clark purchased Whitestone securities within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

6.    Defendant Whitesone is a real estate investment trust ("REIT") incorporated in Maryland with its principal offices located at 2600 South Gessner, Suite 500, Houston, Texas 77063. Whitestone's common shares of beneficial interest trade on the New York Stock Exchange ("NYSE") under the ticker symbol "WSR."

7.    Defendant James C. Mastandrea ("Mastandrea") was the Chief Executive Officer ("CEO") and Chairman of the Company at all relevant times.

8.     Defendant David K. Holeman ("Holeman") was the Chief Financial Officer ("CFO") at all relevant times.

9.     Defendants in paragraphs 7-8 are collectively referred to herein as the "Individual Defendants."

10.    Each of the Individual Defendants:

   (a)    directly participated in the management of the Company;

   (b)    was directly involved in the day-to-day operations of the Company at the highest levels;

   (c)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

   (d)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

   (e)    was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

   (f)    approved or ratified these statements in violation of the federal securities laws.

11.    Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Whitestone's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers

3

and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

12.     As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Whitestone's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

14.    Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Whitestone securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Whitestone's business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase Whitestone securities at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### A.    Company Background

15.    Whitestone owns and operates 57 commercial properties totaling 4.8 million square feet of gross leasable area in Texas, Arizona and Illinois. As of December 31, 2018, its property portfolio had a gross book value of $1.1 billion. Whitestone has elected to be taxed as a REIT under the Internal Revenue Code of 1986.

16.    Additionally, through an investment in Pillarstone Capital REIT Operating Partnership LP ("Pillarstone OP"), Whitestone owns a majority interest in 11 properties containing approximately 1.3 million square feet of gross leasable area. Upon information and belief, the Company owns 81.4% of the total outstanding units of Pillarstone OP.

### B.    Material Misstatements and Omissions during the Class Period

17.    The Class Period starts on May 9, 2018, when after the market close, the Company filed a Form 10-Q for the quarter ended March 31, 2018 ("Q1 2018 10-Q") with the SEC, which provided the Company's first quarter 2018 financial results and positions and stated that the Company's internal control over financial reporting was effective as of March 31, 2018. The Q1 2018 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual

Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

18.    On August 9, 2018, the Company filed a Form 10-Q for the quarter ended June 30, 2018 ("Q2 2018 10-Q") with the SEC, which provided the Company's second quarter 2018 financial results and positions and stated that the Company's internal control over financial reporting was effective as of June 30, 2018. The Q2 2018 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

19.    On November 6, 2018, the Company filed a Form 10-Q for the quarter ended September 30, 2018 ("Q3 2018 10-Q") with the SEC, which provided the Company's third quarter 2018 financial results and positions and stated that the Company's internal control over financial reporting was effective as of September 30, 2018. The Q3 2018 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

20.    The statements in paragraphs ¶17-19 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked effective internal control over financial reporting; (2) Whitestone was incorrectly recognizing assets and liabilities associated with its contribution to Pillarstone Capital REIT Operating Partnership LP; (3) the Company's financial statements for the fiscal year 2018 were overstating revenues; (4) the Company's financial statements for the fiscal

year 2018 could no longer be relied upon; and (5) as a result of the foregoing, the Company's

financial statements were materially false and misleading at all relevant times.

**C.     The Truth Begins to Emerge**

21.    On February 27, 2019, after the market close, Whitestone filed a Form 8-K with

the SEC under item 4.02(a) for non-reliance on previously issued financial statements. Therein,

Whitestone stated in relevant part:

> On February 26, 2019, the Audit Committee (the "Audit Committee") of
> the Board of Trustees of the Company, after consultation with members of senior
> management of the Company, concluded that the Company's unaudited
> consolidated financial statements as of and for the periods ended March 31, 2018,
> June 30, 2018 and September 30, 2018 (collectively, the "Prior Period Financial
> Statements") included in the Company's Quarterly Reports on Form 10-Q for the
> quarterly periods ended March 31, 2018, June 30, 2018 and September 30, 2018,
> respectively, should be restated to correct the accounting error described below
> and should no longer be relied upon.

> The Company will restate, as soon as reasonably practicable, the Prior
> Period Financial Statements in a comprehensive Annual Report on Form 10-K for
> the year ended December 31, 2018 (the "Comprehensive Form 10-K").

> *        *        *

> On January 1, 2018, the Company adopted ASU 2014-09 ("Topic 606"),
> as subsequently amended, using the modified retrospective method and applied
> Topic 606 to those contracts that were not completed as of January 1, 2018. Topic
> 606 added a new section, ASC 610, "Other Income-Gains and Losses from the
> Derecognition of Nonfinancial Assets," which effectively superseded industry
> specific accounting guidance applicable to real estate transactions. The Company
> considered the applicability of the new accounting requirements to the
> Contribution and concluded that, in the judgment of management, the transfer of
> control criteria requirement in Topic 606 had not been met and continued to
> recognize the assets and liabilities associated with the Contribution in the
> Company's financial statements subsequent the adoption of Topic 606.

> In August 2018, the Company received a comment letter from the Staff
> relating to its Quarterly Report on Form 10-Q for the period ended June 30, 2018.
> The Staff requested that the Company provide them with an analysis of the
> Company's determination that the Contribution did not meet the requirements for
> derecognition of the underlying assets under Topic 606, and an explanation of the
> Company's consideration of the immaterial accounting errors related to

7

Pillarstone OP in its conclusion that disclosure controls and procedures and internal controls over financial reporting were effective as of June 30, 2018 and December 31, 2017. In September 2018, the Company responded to the Staff's letter with the requested analysis and explanation. In October 2018, the Company received a comment letter from the Staff with certain follow up questions. ***Subsequently, the Company engaged in verbal discussions with the Staff regarding its responses and, in February 2019, the Staff verbally informed the Company that it objected to Management's conclusion regarding the assessment of the transfer of control criteria in Topic 606 with respect to the Contribution and objected to the Company's continued recognition of the underlying assets and liabilities associated with the Contribution subsequent to January 1, 2018, the adoption date of Topic 606.*** Accordingly, the Company has determined that it will restate the Prior Period Financial Statements in the Comprehensive Form 10-K. Because this change from the profit sharing method is only applicable for periods ending after giving effect to the implementation of Topic 606, no periods prior to January 1, 2018 are affected by this error.

As a result of the restatements, the Company will derecognize the underlying assets and liabilities associated with the Contribution as of January 1, 2018 and will recognize the Company's investment in Pillarstone OP under the equity method. The adjustments are expected to increase the Company's retained earnings as of January 1, 2018 by $19.1 million. ***For the three months ended March 31, 2018, the Company estimates this change will decrease revenue by $3.8 million, decrease total expenses by $3.3 million, increase equity in earnings of real estate partnership by $0.7 million and increase net income by $0.2 million. For the three months ended June 30, 2018, the Company estimates this change will decrease revenue by $3.6 million, decrease total expenses by $3.3 million, increase equity in earnings of real estate partnership by $0.6 million and increase net income by $0.2 million. For the six months ended June 30, 2018, the Company estimates this change will decrease revenue by $7.4 million, decrease total expenses by $6.6 million, increase equity in earnings of real estate partnership by $1.3 million and increase net income by $0.4 million. For the three months ended September 30, 2018, the Company estimates this change will decrease revenue by $3.9 million, decrease total expenses by $3.6 million, increase equity in earnings of real estate partnership by $0.5 million and increase net income by $0.2 million. For the nine months ended September 30, 2018, the Company estimates this change will decrease revenue by $11.3 million, decrease total expenses by $10.2 million, increase equity in earnings of real estate partnership by $1.8 million and increase net income by $0.6 million.*** These estimates are subject to finalization, including completion of the Company's technical accounting analysis for these matters and completion of interim review procedures.

In light of the facts and determinations described above, the Company's management, under the supervision and with participation of the Company's Chief Executive Officer and Chief Financial Officer, is in the process of evaluating the

effectiveness of the Company's internal controls over financial reporting and disclosure controls and procedures. If one or more material weaknesses is determined to have existed, management of the Company expects to conclude that the Company's internal controls over financial reporting and disclosure controls and procedures were ineffective for the periods ending March 31, June 30 and September 30, 2018 and possibly for other periods.

Emphasis added.

22.     On this news, over the course of two trading days, Whitestone's price per common share of beneficial interest declined from a close of $14.25 on February 27, 2019, to a close of $13.01 on February 28, 2019. The next day, the stock continued to plummet, to close at $12.18 on March 1, 2019, *an overall drop of approximately 14.52 percent.*

23.     On March 15, 2019, after the market close, Whitestone filed a Form 10-K with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended December 31, 2018 ("2018 10-K"), which was signed and certified under the Sarbanes-Oxley Act of 2002 by the Individual Defendants. Therein, Defendants stated in pertinent part:

> ### *Internal Control Over Financial Reporting and Disclosure Controls and Procedures*
>
> The Company identified a material weakness in its internal control over financial reporting as of December 31, 2018. As a result of the material weakness, management concluded that the Company's internal control over financial reporting was not effective as of December 31, 2018 and determined that its disclosure controls and procedures were not effective as of March 31, 2018, June 30, 2018, September 30, 2018 and December 31, 2018. The Company has implemented and continues to implement measures to remediate the material weakness. See Part II, Item 9A, "Controls and Procedures" of this Annual Report on Form 10-K for more information about the material weakness and our remediation activities.

## ADDITIONAL SCIENTER ALLEGATIONS

24.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially

false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Whitestone, their control over, and/or receipt and/or modification of Whitestone's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Whitestone, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

25.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's securities. As detailed above, when the truth about Whitestone's misconduct and its lack of operational and financial controls was revealed, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Whitestone's securities price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the securities price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

26.    At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Whitestone's business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Whitestone's securities to be artificially inflated. Plaintiff and other Class members purchased Whitestone's securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

**PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET**

27.    At all relevant times, the market for Whitestone securities was an efficient market for the following reasons, among others:

(a) Whitestone securities met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient market;

(b) During the Class Period, Whitestone securities were actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, Whitestone filed with the SEC periodic public reports during the Class Period;

(d) Whitestone regularly communicated with public investors via established market communication mechanisms;

(e) Whitestone was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was

publicly available and entered the public marketplace; and

(f) Unexpected material news about Whitestone was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

28.    As a result of the foregoing, the market for Whitestone securities promptly digested current information regarding Whitestone from all publicly available sources and reflected such information in Whitestone's stock price. Under these circumstances, all purchasers of Whitestone securities during the Class Period suffered similar injury through their purchase of Whitestone's securities at artificially inflated prices, and a presumption of reliance applies.

29.    Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's financials and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Whitestone.

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

30.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

31.    To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that

could cause actual results to differ materially from those in the purportedly forward-looking statements.

32.      Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Whitestone who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

33.      Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Whitestone securities on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

34.      The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Whitestone securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may

be identified from records maintained by Whitestone or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Upon information and belief, as of November 5, 2018, Whitestone had more than 39,773,002 common shares of beneficial interest outstanding. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

35.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

36.    Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

(b)    whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

(c)    whether the price of Whitestone securities during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

(d)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### COUNT I
### *Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

39.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Whitestone securities of beneficial interest at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

41.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Whitestone securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

42.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Whitestone as specified herein.

43.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Whitestone's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Whitestone and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Whitestone securities during the Class Period.

44.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of

16

information to the investing public which they knew or recklessly disregarded was materially false and misleading.

45.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Whitestone's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

46.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Whitestone's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Whitestone's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Whitestone's securities during the Class Period at artificially high prices and were or will be damaged thereby.

47.　At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Whitestone's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Whitestone securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

48.　By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

49.　As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

50.　This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II
### *The Individual Defendants Violated Section 20(a) of the Exchange Act*

51.　Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.　The Individual Defendants acted as controlling persons of Whitestone within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the

decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

53.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

54.     As set forth above, Whitestone, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

55.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

56.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)     Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's

counsel as class counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)     Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: April 16, 2019                     Respectfully submitted,

                                          */s/ R. Dean Gresham*_____
                                          R. DEAN GRESHAM
                                          **STECKLER GRESHAM COCHRAN PLLC**
                                          R. Dean Gresham
                                          Texas Bar No. 24027215
                                          dean@stecklerlaw.com
                                          Stuart L. Cochran
                                          Texas Bar No. 24027936
                                          stuart@stecklerlaw.com
                                          *Liaison Counsel*

*/s/Eduard Korsinsky*
**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email:ek@zlk.com

*Attorneys for Plaintiff*

21

# EXHIBIT A



55 Broadway, 10th Floor
New York, NY 10006
T:212-363-7500
F:212-363-7171
www.zlk.com

**CERTIFICATION OF NAMED PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, Brian Clark, duly certify and say, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transaction(s) in Whitestone REIT which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.

5. Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this April 10, 2019.

Name: Brian Clark

Signed:

**Schedule A**

**Brian Clark**
**Transactions in Whitestone REIT (WSR) Securities**
**Class Period: May 9, 2018, and February 27, 2019, inclusive**

| | Acc #1 | | |
|---|---|---|---|
| Date of Transaction | Buy (B) or Sell (S) | Quantity | Price ($) |
| 2/7/2019 | B | 22 | 14.12 |